UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREATER NEW ORLEANS FAIR HOUSING CENTER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-858 c/w 11-737** |
| | *Pertains to 11-858 only* |
| **ST. BERNARD PARISH, ET AL.** | **SECTION: "C" (1)** |

### ORDER

Before the Court are two motions: (1) Motion for Declaratory Judgment; or in the Alternative, to Amend and/or Strike Non-Specific and Ambiguous Terms from Consent Order Entered February 27, 2008 filed by Defendants St. Bernard Parish Government and St. Bernard Parish Council (collectively, "Defendants") (Rec. Doc. 67); and (2) Motion to Strike Jury Demand filed by Plaintiffs Greater New Orleans Fair Housing Act Center and Provident Realty Advisors, Inc. (collectively, "Plaintiffs"). (Rec. Doc. 79). Having reviewed the record, memoranda of counsel, and the applicable law, the Court DENIES Defendants' Motion and GRANTS Plaintiffs' Motion for the following reasons.

**I. Background**

The parties to this matter entered into a Consent Order on February 27, 2008 ("Consent Order") resolving Plaintiffs' allegations in a previous case that Defendants violated the Fair Housing

Act of 1968 ("FHA"), 42 U.S.C. §§ 3601, and 42 U.S.C. §§ 1981-1983 when they passed several housing ordinances. (*Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, Civ. No. 06-7185 ("*GNOFHAC I*"), Rec. Doc. 114). Plaintiffs in that case alleged that the ordinances were enacted with the intent and effect of discriminating against minorities and they sought a preliminary injunction to stay the operation of the blood relative ordinance[1]. Pursuant to the terms of the injunctive relief, St. Bernard Parish was enjoined from

> violating the terms of the federal Fair Housing Act, and 42 U.S.C. §§ 1981, 1982, and 1983. Specifically, St. Bernard Parish agrees that it shall not:
> A. Refuse to rent a dwelling unit, or otherwise make unavailable or deny a dwelling unit, to any person because of race or national origin;
> B. Deny minority citizens the same rights as are enjoyed by white citizens to make and enforce contracts;
> C. Deny minority citizens the same rights as are enjoyed by white citizens to lease, hold and otherwise enjoy real property;
> D. Deny any person equal protection of the law by discriminating on the basis of race and national origin in the leasing of real property; and,
> E. Retaliate against Plaintiffs or any other person who alleges that Defendants have violated the Fair Housing Act, 42 U.S.C. § 3601 et seq.

(*GNOFHAC I*, Rec. Doc. 114, 6-7 at ¶ 9). The Defendants agreed to be bound by the Consent Order and this Court's continuing jurisdiction to enforce the Consent Order for a period of three years. *Id.* at ¶ 12. That period was extended until December 31, 2011. (*GNOFHAC I*, Rec. Doc. 459).

On April 14, 2011, Plaintiffs sued Defendants alleging four causes of action under the FHA, 42 U.S.C. §§ 3604(a)-(c) and 3617, and one contempt action under the Consent Order described above, for actions Defendants have taken since December 2010. (Rec. Doc. 1 at ¶¶ 219-228). Plaintiffs later amended their complaint. (Rec. Doc. 34). Plaintiffs seek declaratory and injunctive

---

[1] The parties refer to the "blood relative" ordinance as shorthand for a housing ordinance passed by the St. Bernard Parish Council on September 19, 2006, that stated: "No person . . . shall rent, lease, loan, or otherwise allow occupancy or use of any single-family residence located in an R-1 zone by any person or group of persons, other than a family member(s) related by blood within the first, second or third direct ascending or descending generation(s), without first obtaining a Permissive Use Permit from the St. Bernard Parish Council." (*GNOFHAC I*, Rec. Doc. 114 at 2).

2

relief for Defendants' alleged violation of the FHA and the Consent Order, sanctions for Defendants' alleged contempt of the Consent Order, and costs and reasonable attorney's fees. (Rec. Doc. 34 at 52-53).

## II. Motion for Declaratory Judgment; or in the Alternative, to Amend and/or Strike Provisions of Consent Decree (Rec. Doc. 67)

Defendants argue that the Court should declare stricken or unenforceable terms of the Consent Order that are vague or ambiguous and thus do not comply with Rule 65(d) of the Federal Rules of Civil Procedure ("FRCP"), which governs the scope of injunctions. (Rec. Doc. 67). Alternatively, Defendants argue that the Consent Order should be amended to include only terms that comply with Rule 65(d). (Rec. Doc. 67). Plaintiffs argue that Defendants' Motion should be denied because (1) relief is barred by the doctrine of issue preclusion; (2) the requirements for Rule 65(d) have not been met; (3) this Court lacks jurisdiction over the motion because Defendants' appeal from the Court's February 19, 2009 Order "denying Defendants' prior, identical motion," is on appeal before the Fifth Circuit; and (4) the requirements for amending an order under Rule 60(b) have not been met. (Rec. Doc. 78 at 2-3).

Defendants filed an identically-titled Motion in *GNOFHAC I* against the same plaintiffs. (Rec. Doc. 155). The Court denied Defendants' Motion in the previous lawsuit. (Rec. Doc. 178). In the instant Motion, Defendants present no information, whether in the form of new arguments, new law, or new evidence, that changes the Court's conclusion in the Order denying Defendants' Motion in *GNOFHAC I*. Instead, Defendants rely on the same authority in the instant Motion as they did in the Motion in *GNOFHAC I*, namely 28 U.S.C. § 2201 (creating the remedy of declaratory judgment); Rule 57 of the FRCP (outlining the procedure for obtaining declaratory

3

judgment); Rules 60(b)(4) and 60(b)(6) of the FRCP (permitting a court to relieve a party of a decision the court made where the judgment is void or for any other justifiable reason); and Rule 65(d) of the FRCP (mandating that injunctions state why it was issued, state its terms specifically, and describe "in reasonable detail" the acts it seeks to restrains). The only material distinction between Defendants' instant Motion and the Motion in *GNOFHAC I* is that Plaintiffs' contempt claim arises out of a consent order confected in another law suit. *Compare GNOFHAC I*, Rec. Doc. 155 *with* Case No. 11-858, Rec. Doc. 67. Yet defendants make no arguments based on that distinction. Accordingly, the instant Motion is denied.

**III. Motion to Strike Jury Demand (Rec. Doc. 79).**

In their Motion to Strike Jury Demand, Plaintiffs argue that Defendants have no right to a jury trial on any of Plaintiffs' claims because that right attaches only to claims for legal, not equitable relief, and all four FHA claims and the single claim for contempt are equitable claims for which they are demanding equitable relief. (Rec. Doc. 79 at 4-9). In particular, with respect to Plaintiffs' FHA claims, Plaintiffs request that the Court (1) declare that Defendants violated the FHA, (2) permanently enjoin Defendants from interfering unlawfully with Plaintiffs' activities, (3) appoint a special master to oversee future disputes between the parties, and (4) award attorney's fees to Plaintiffs. (Rec. Doc. 79 at 52-53). With respect to Plaintiffs' contempt claim, Plaintiffs ask that the Court (1) declare Defendants in contempt for violating the Consent Order, (2) impose "sanctions for Defendants' contempt," and (3) award attorney's fees to Plaintiffs. *Id.*

Defendants argue on the other hand that they are entitled to a jury because Plaintiffs' allegations establish claims for damages even though Plaintiffs characterize the claims as equitable and even though they do not specifically ask for damages in their First Amended Complaint. (Rec.

4

Doc. 81 at 2-6). Additionally, Defendants argue that if the Court finds no jury trial right attaches, the Court nevertheless should allow the claim for civil contempt sanctions to be tried by a jury as a procedural safeguard.

Plaintiffs' four FHA claims and the types of relief they seek are all non-legal, and thus no jury trial right applies. The Seventh Amendment to the United States Constitution creates a right to jury trial in "[s]uits at common law, where the value in controversy shall exceed twenty dollars...." U.S. Const. Amend. VII. That right extends only to claims in which legal rights and remedies are at stake and does not extend to equitable rights and remedies. *Curtis v. Loether*, 415 U.S. 189, 193 (1974). Courts apply a two-pronged test to determine whether a jury right attaches: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) (internal quotation marks omitted) (citing *Tull v. United States*, 481 U.S. 412, 417-418 (1987). Generally, a remedy is legal if it is for monetary damages. *See Curtis*, 415 U.S. at 196. However, a demand for monetary damages is an equitable remedy if it is for backpay or if it is otherwise restitutionary in nature. *See Terry*, 494 U.S. at 570-571.

Here, the first four claims are made under the FHA and are for declaratory and injunctive relief. The fifth claim is a civil contempt claim and is for declaratory relief and sanctions. Plaintiffs do not seek monetary or punitive damages for either the FHA claims or the contempt claim. Defendants argue that if Plaintiffs prevail, the FHA would permit recovery of monetary damages for all five claims. (Rec. Doc. 81 at 3-5). Because Plaintiffs could have asked for money damages in addition to the declaration and injunction, the argument goes, all of Plaintiffs' requested remedies should be considered legal. (Rec. Doc. 81 at 3-5). Defendants are correct to point out that some

claims or forms of relief, which were traditionally triable only in equity or appear at first glance to be equitable, have since been held to be legal. *See, e.g., Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 475 (1962) (holding request for accounting – traditionally an equitable form of relief – was legal). However, this is not the case for declaratory or injunctive relief – the remedies sought for the four FHA claims in this case. The Fifth Circuit has held that FHA claims for equitable relief are considered equitable and thus under *Curtis* the Seventh Amendment jury trial right does not attach. *United States v. Reddoch*, 467 F.2d 897, 898 (5th Cir. 1972).

Nor do Defendants convince this Court that the Plaintiffs' requested remedy for their contempt claim should be tried by a jury. Ordinarily, a jury trial right does not attach in civil contempt claims. *Cheff v. Schnackenberg*, 384 U.S. 373, 377 (1966). In particular, indirect, or out-of-court, civil contempt claims, such as failure to respond to discovery or other actions that "impede the court's ability to adjudicate the proceedings before it," or those "involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment" are properly imposed through civil proceedings and do not warrant procedural protections typically applied in criminal proceedings like the right to a jury trial. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 833 (1994). However, some indirect contempts are analogous to criminal contempts and may require criminal procedural protections to safeguard "the due process rights of parties and prevent the arbitrary exercise of judicial power." *Bagwell*, 512 U.S. at 834. Specifically, "[c]ontempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding." *Bagwell*, 512 U.S. at 833-834.

In *Bagwell*, the plaintiffs sought contempt fines of $52 million. The Court held that such contempt fines were analogous to criminal sanctions for several reasons. First, the fines were not compensatory or coercive but rather "analogous to fixed, determinate, retrospective criminal fines

6

which [defendants] had no opportunity to purge once imposed." *Bagwell*, 512 U.S. at 837. Second, they were imposed in response to "widespread, ongoing, out-of-court violations of a complex injunction," unlike typical civil contempts which involve "confining a contemnor indefinitely until he complies with an affirmative commmand such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S.418, 442 (1911) (explaining that a key characteristic of civil contempt sanction is that the contemnor can purge the sentence by performing the affirmative act he previously refused to do). In particular, the *Bagwell* court noted that defendants' contumacy had lasted "many months" and covered a large portion of the State of Virginia. *Bagwell*, 512 U.S. at 837. Third, the Court reasoned that the fine was "serious, totaling $52 million." *Id.* The court concluded that the defendants were entitled to a criminal jury trial. *Bagwell*, 512 U.S. at 837.

Here, if Plaintiffs prevail, Defendants will be subject to sanctions for which Defendants will have no opportunity to discharge themselves. Furthermore, Plaintiffs allege that Defendants' contemptuous behavior lasted far longer than that of the defendants in as in *Bagwell*. However, *Bagwell* is not applicable to this case. First, unlike in *Bagwell*, where the plaintiffs asked for fines, Plaintiffs here are asking for compensatory sanctions. The *Bagwell* court considered this factor important in holding that the fines were criminal, not civil:

> In the instant case, neither any party nor any court of the Commonwealth [of Virginia] has suggested that the challenged fines are compensatory. At no point did the trial court attempt to calibrate the fines to damages caused by the union's contumacious activities or indicate that the fines were "to compensate the complainant for losses sustained."

*Bagwell*, 512 U.S. at 834 (citing *U.S. v. United Mine Workers of America*, 330 U.S. 258, 303-304 (1947). Unlike in *Bagwell*, Plaintiffs have stated that the sanctions they seek are to compensate them for harms sustained when Defendants failed to comply with the Consent Order. (Rec. Doc. 87 at 6, 7, 8). Second, district courts are capable of holding evidentiary hearings to resolve disputed

7

facts related to the issue whether a party acted in contempt, as this Court has done several times in *GNOFHAC I*. Therefore, even though Plaintiffs have not asked for a fixed sum of damages as of yet, making it unclear whether Plaintiffs' damages claim rises to the same level of "serious[ness]" as the $52 million in *Bagwell*, the totality of circumstances make it clear that Defendants are not entitled to a jury trial in this case. Accordingly, Plaintiffs' Motion to Strike Jury Demand is granted. (Rec. Doc. 79).

**IV. Conclusion**

Accordingly,

IT IS ORDERED that Defendants' Motion for Declaratory Judgment; or in the Alternative, to Amend and/or Strike Non-Specific and Ambiguous Terms from Consent Order Entered February 27, 2008 is DENIED. (Rec. Doc. 67).

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike Jury Demand is GRANTED. (Rec. Doc. 79).

New Orleans, Louisiana, this 5th day of January, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE