**11UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CHATEAU LAFITTE HOMEOWNER'S** | | |
| **ASSOCIATION, INC.; ET AL.** | * | **CIVIL ACTION NO.: 11-0737** |
| | * | |
| vs. | * | **JUDGE: HELEN G. BERRIGAN** |
| | * | |
| **ST. BERNARD PARISH GOVERNMENT** | * | **SECTION 'C'** |
| | * | |
| **RELATES TO:** | * | **MAG. SUSAN SHUSHAN** |
| | * | |
| 2:12-cv-00322 | * | |
| 2:12-cv-00325 | * | |
| ****************************************** | | |

## Order and Reasons[1]

Before this Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), and/or Rule 12(c), by individual defendants Frank Auderer, Polly Boudreaux, George Cavignac, Mary Chimento, Earl Dauterive, Fred Everhardt, Jr., Mike Ginart, Kenneth Henderson,[2] Wayne Landry, and Ray Lauga, Jr. (11-cv-737 Rec.Doc.143). Having considered the record, memoranda of counsel, and the law, this Motion is DENIED.

---

[1] Rebekka Veith, a second-year student at Tulane University Law School, contributed to the research and preparation of this order and reasons.

[2] Claims against Defendant Henderson have since been dismissed without prejudice. (Rec.Doc.157).

1

**I. Background**

In 2005, Hurricane Katrina wrought much devastation and displacement on St. Bernard Parish and its citizens. In the years following, officials in St. Bernard Parish took up the task of rebuilding their community. Part of this rebuilding effort included a series of zoning laws. (12-cv-322 Rec.Doc.14 at ¶1). This Court has previously considered some of these laws in *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, Civil Action no. 2:06-cv-7185-Hgb-SS (E.D.La), but the law challenged in this suit is new to this Court. This law, enacted in 2006, prohibited homeowners in St. Bernard Parish from renting out single-family residences without first obtaining a "permissive use permit" ("PUP"). (St. Bernard Parish Ordinance 697-12-06, available at http://library.municode.com/index.aspx?clientId=11497). The ordinance took effect on January 4, 2007. (12-cv-322 Rec.Doc.14 at ¶57). These permits are issued by the St. Bernard Parish Council, a body which defendants Auderer, Boudreaux, Cavignac, Everhardt, Ginart, Landry and Lauga were all members of at various times between 2006 and the present. (St. Bernard Parish Ordinance 697-12-06; 12-cv-322 Rec.Doc.14 at ¶¶ 5, 31-33, 35-37, 41-42). Before a PUP permit can be submitted to the St. Bernard Parish Council, a permit applicant is required to obtain " a review, evaluation and recommendation" from the St. Bernard Parish Planning Commission. (St. Bernard Parish Ordinance 697-12-06). Defendants Chimento and Dauterive were members of this Commission. (12-cv-322 Rec.Doc. 14 at ¶¶ 34-35).

Plaintiffs filed this suit in January of 2011, alleging that by enacting, applying and enforcing the PUP ordinance, the aforementioned members of the St. Bernard Parish Council and Planning Commission caused harm to the individual plaintiffs and violated various provisions of

the Fair Housing Act, 42 USC §3604(a)-(c) and §3617, as well as 42 U.S.C §§1981 and 1982. (12-cv-322 Rec.Doc.14 at ¶¶75, 142, 144, 146, 148). Specific allegations in the complaint include that the aforementioned defendants collaborated with residents of St. Bernard Parish to keep out African-American renters, that defendant Cavignac told one plaintiff who applied for a PUP that St. Bernard Parish was a "vanilla community" and that the Parish planned to "[keep] it that way," and that defendant Chimento stated "we're trying to keep trash out of the Parish" to one plaintiff who attempted to apply for a PUP. (12-cv-322 Rec.Doc.14 at ¶¶70, 87, 101). Defendants filed the instant 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, arguing that the individual defendants were entitled to either absolute or qualified immunity. (11-cv-737 Rec.Doc.143).

## II. Law and Analysis

Rule 12(b)(6) allows defendants to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. To determine whether a dismissal is appropriate, the Court must decide whether the facts alleged, if true, would entitle plaintiff to some sort of legal remedy. *Ramming v. U.S.*, 281 F.3d 158, 162 (5th Cir.2001); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994).

"The purpose of a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of the complaint, not to judge the merits of the case." *First National Bank of Louisville v. Lustig*, 809 F. Supp 444, 446 (E.D.La .1992). Dismissal is appropriate only if the district court could not grant relief to the plaintiff under any set of facts consistent with the allegations in the complaint. *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir.1996) (citing *American Waste & Pollution Control Co. v. Browning–Ferris*, 949 F.2d 1384,

1386 (5th Cir.1991)). Furthermore, in Westfall, the Court stated that in viewing the facts in favor of the plaintiff, the Court need not strain to find inferences favorable to the plaintiff but also acknowledged that the plaintiff is entitled to all inferences that surface from a fair and reasonable reading of the pleadings. *Id.* However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Central Laborers' Pension Fund v. Integrated Electrical Services, Inc.*, 497 F.3d 546, 550 (5th Cir.2007) (citations omitted).

**A. Absolute Immunity**

Defendants contend that they are each entitled to absolute immunity from suit pursuant to Article III, §8 of the Louisiana Constitution, which states that "[a] member of the legislature shall be privileged from arrest, except for felony, during his attendance at sessions and committee meetings of his house and while going to and from them. No member shall be questioned elsewhere for any speech in either house." La. Const. art. III, § 8. However, whether state law protects defendants from suit is of no moment in this case, because the claims arise out of federal law. *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). The relevant question is thus whether defendants are entitled to absolute immunity under Article I, §6 of the United States Constitution, which provides that legislators are "privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." This section of the United States Constitution applies to state as well as federal legislators. *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951).

In *Bryan v. City of Madison, Mississippi*, the United States Court of Appeals for the Fifth Circuit set out a two-step test for determining whether a grant of absolute immunity is

4

appropriate in light of a legislator's actions. 213 F.3d 267, 273 (5th Cir. 2000). The Fifth Circuit in that case held that:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Id.* In *Bryan*, the Fifth Circuit held that a mayor's repeated vetoes of a zoning board's decisions and delayed decisions on approval of plans for apartment buildings were non-legislative activities. *Id.* at 273-74. The court reasoned that because "general rules [were] . . . applied to one specific piece of property," the vetoes imposed by the mayor in *Bryan* were not legislative. *Id.* at 274. Moreover, the Fifth Circuit held that delayed votes that were "specific and particular" to the plaintiff's planned apartment buildings were not legislative. *Id.* The Court in *Bryan* did find that adding a rezoning vote to an agenda for a board meeting in order to achieve a particular vote was "irregular and inappropriate," but nonetheless legislative. *Id.* at 272, 274.

Based on the assertions in the complaint, reasonable inferences can be made that defendants were acting administratively, not legislatively. The complaint alleges that defendants' "enactment, application, and enforcement" of the PUP ordinance caused harm to the plaintiffs. (12-cv-322 Rec.Doc.14 at ¶75). Enacting an ordinance is a "general policy," but applying and enforcing an ordinance that requires homeowners to submit individual applications for each home they intend to rent necessarily requires

5

applying rules to "one specific piece of property," which is an administrative activity according to the Fifth Circuit's holding in *Bryan*. 213 F.3d at 274. Because reasonable inferences can be made that at least some of the actions on which plaintiffs' claims are based were administrative, and thus not protected by absolute legislative immunity, defendants' motion to dismiss cannot be granted based on their absolute immunity claim.

**B. Qualified Immunity**

Defendants also assert that they are entitled to qualified immunity under Louisiana Revised Statute 9:2798.1. (11-cv-737 Rec.Doc.143-1 at 14). But again, federal law is the appropriate standard since plaintiffs make claims under federal statutes. *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). The United States Supreme Court has held that "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "[t]he contours of the right . . . [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Lower courts may decide which prong of the qualified immunity analysis to consider first. *Pearson v. Callahan*, 555 U.S. 233, 236 (2009). Thus, if a court concludes that a right was not plainly established at the time of the conduct in question, it need not consider whether the right was violated. *See Id.*

Plaintiffs allege in their complaint that defendants violated the Fair Housing Act, 42 USC §3604(a)-(c) and §3617, as well as 42 USC §§1981-1982.[3] (12-cv-322 Rec.Doc.14 ¶¶141-152). The relevant parts of §3604 provide that it is unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or natural origin;
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin;
> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or natural origin, or an intention to make any such preference, limitation, or discrimination.

Additionally, §3617 provides that

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3064, 3605, or 3606 of this title.

---

[3]The relevant parts of 42 U.S.C. §§1981-1982 provide that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other,"

and that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Defendants allege in their motion and supporting memorandum that they are entitled to qualified immunity because defendants did not deprive plaintiffs of a clearly established right. (11-cv-737 Rec.Doc.143-1 at 17). In support of this, defendants cite Judge Vance's holding in *Baker v. St. Bernard Parish Council* that the PUP ordinance had a "rational relationship to a legitimate government interest" and was therefore did not violate due process. 2008 WL 4681373 at *10 (E.D.La 2008). Defendants assert that they are entitled to qualified immunity for their actions pursuant to the PUP ordinance because in light of Judge Vance's ruling, they believed they were "serving an objectively 'legitimate government interest.'" (11-cv-737 Rec.Doc.143-1 at 18). Defendants also maintain that the PUP ordinance was passed "pursuant to the Consent Order" that this Court provided in 2:06-cv-07185, and as such the defendants were "operating on an objectively good faith basis" in enacting, applying, and enforcing the PUP ordinance. (11-cv-737 Rec.Doc. 143-1 at 19).

Defendants' *Baker* argument fails for two reasons. First, *Baker* was decided in October 2008. At least some of the plaintiffs' allegations occurred before this decision, and thus defendants could not have relied on the decision in *Baker* to determine that all of their allegedly harmful actions were lawful, because when some of the actions occurred, *Baker* was not yet the law. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Additionally, in *Baker*, Judge Vance determined that the PUP ordinance could survive under the takings clause and the due process clause of the United States Constitution. 2008 WL 4681373 at *7, 11. Moreover, Judge Vance specifically noted that racial discrimination had not been alleged in a complaint and therefore was not considered in her analysis. *Id.*

at *9.  The plaintiffs allege in their complaint that the individual defendants violated the Fair Housing Act and 42 USC §§1981-1982 by applying the PUP ordinance such that "homeowners who wanted to rent their properties, especially to African-American tenants, [were prevented] from doing so." (12-cv-322 Rec.Doc. 14 at ¶¶7, 141-152). Defendants may have reasonably relied on *Baker* to determine that by applying and enforcing the PUP ordinances they were not violating the clauses of the Constitution discussed in that case, but they could not use *Baker* to reason that they were acting lawfully under the statutes at issue in the plaintiffs' complaint because *Baker* did not reach these issues.

Defendants' argument that the PUP ordinance was "utilized as a part of a filed Consent Order" seems to suggest that because Greater New Orleans Fair Housing Action Center ("GNOFHAC") did not challenge the PUP ordinance's enactment or its "approval criteria," defendants believed that enacting, applying, and enforcing the law did not violate a right. (11-cv-737 Rec.Doc.143-1 at 19).  While it is worth noting that GNOFHAC is now one of the plaintiffs in this action and thus it seems that any implicit approval of the PUP ordinance is now explicitly withdrawn, this assertion does work as evidence that defendants were not aware that their actions may have violated a clearly established right. However, this alone is not sufficient to grant a 12(b)(6) motion.  Any information involving the Consent Order is necessarily fact-specific to that Order and thus asks this Court to look at facts beyond "the contents of the pleadings," which this Court cannot do when considering a 12(b)(6) motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Defendants' arguments for qualified immunity somewhat misconstrue the function of the qualified immunity analysis. Since the test is whether "(1) the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," the relevant questions are whether the rights that plaintiffs claim were violated under the Fair Housing Act and 42 U.S.C. §§1981-82 were clearly established to a reasonable person in defendants' position, and whether these rights were, in fact, violated. *al-Kidd,* 131 S.Ct. at 2080. The question is not whether the defendants were acting on a general "objectively good-faith basis." (11-cv-737 Rec.Doc.143-1 at 19). Plaintiffs assert in their complaint that defendants violated the cited provisions of the Fair Housing Act and 42 U.S.C. §§1981-1982 by preventing plaintiffs from providing rental housing (12-cv-322 Rec.Doc. 14 at ¶¶73, 142), denying permits on the basis of race (*Id.* at ¶¶ 73, 144), making discriminatory statements (*Id.* at ¶¶ 87, 98, 146), interfering with plaintiffs' efforts to provide housing to groups protected by the Fair Housing Act (*Id.* at ¶¶ 81, 86, 101, 111, 115, 188, 148), and interfering in rental contracts (*Id.* at ¶150). These rights are established by the laws cited and confirmed by case law such that a reasonable public official would have known during the time of the alleged violations that these rights existed.[4] Thus, if plaintiff's allegations are accepted as true, which they must be in a 12(b)(6) motion unless they are

---

[4]*See, e.g., United States v. City of Parma*, 661 F.2d 562, 568 (6th Cir. 1981)(finding that among other actions, a city's "long-standing opposition" to low-income housing, and passage of an ordinance requiring voter approval for low-income housing, including rental housing, violated 42 U.S.C. §3604 and §3617 because it denied housing opportunities to African-Americans); *Smith v. Town of Clarkton*, 682 F.2d 1055, 1065 (4th Cir. 1982)(holding that terminating a housing project violated 42 U.S.C. §3604 because it adversely affected African-Americans and was cancelled in part because of community's "deeply felt . . . invidious racial animus");

"conclusory," then defendants' actions violated clearly established rights and thus they are not entitled to a grant of qualified immunity. *See Central Laborers' Pension Fund*, 497 F.3d at 550.

**III. Conclusion**

Accordingly,

IT IS ORDERED that the Motion to Dismiss filed by individual defendants Frank Auderer, Polly Boudreaux, George Cavignac, Mary Chimento, Earl Dauterive, Fred Everhardt, Jr., Mike Ginart, Kenneth Henderson, Wayne Landry, and Ray Lauga, Jr., is DENIED. (11-cv-737 Rec.Doc.143).

New Orleans, Louisiana, this 23rd day of July, 2012

**HELEN G. BERRIGAN**

**UNITED STATES DISTRICT JUDGE**